UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-318-GWU

GERALDINE NAPIER, PLAINTIFF,

VS.  **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff originally filed her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) in April and May, 2000, alleging disability due to headaches and severe shoulder and chronic lower back pain (Tr. 94), but was administratively determined to be able to return to her past relevant work in a decision by an Administrative Law Judge (ALJ) dated December 27, 2001. (Tr. 11-20). After a period of reconsideration prompted by the court's remand of March 4, 2003, Napier V. Barnhart, London Civil Action No. 02-170-GWU (E.D. Ky.), the case is again before the court on cross-motions for summary judgment.

## APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 855 (6th

1

Napier

Cir. 1990). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Crouch, 909 F.2d at 855.

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. Section 404.1520.

The step referring to the existence of a "severe" impairment has been held to be a de minimis hurdle in the disability determination process. Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986). An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirements may be used to weed out claims that are "totally groundless." Id., n.1.

Step four refers to the ability to return to one's past relevant category of work, the plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human

Napier

Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-

Napier

making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The prior decision was remanded because of inadequacies in the ALJ's hypothetical question. The court noted that the hypothetical did not reflect restrictions on reaching overhead, which were included by a consultative physical examiner, Dr. Bobby J. Kidd, and a state agency reviewing source upon whom the ALJ purported to rely. (Tr. 17, 272-9, 290, 378-80). In view of the plaintiff's description of her past relevant work as involving such reaching, and the possibility that reaching might be involved in the alternative jobs described by the VE, the case was remanded for further evaluation. (Tr. 379-80). In the meantime, the plaintiff had filed new DIB and SSI applications in April, 2002 (Tr. 462-4, 666-8), which were consolidated with the prior applications.

A new ALJ reconsidered the evidence, along with newer medical reports, and presented a hypothetical question to a vocational expert (VE), which again did not include any restrictions on reaching. The ALJ asked whether a person of the plaintiff's age, education, and work background could perform any jobs if she were limited to "light" level exertion with a sit/stand option every two hours, and also had the following non-exertional limitations. (Tr. 365). She: (1) could not climb ladders, ropes, or scaffolds; (2) could have no exposure to workplace hazards or vibrations; (3) could occasionally stoop, crouch, crawl, and kneel; and (4) had a "limited but satisfactory" ability to relate to co-workers, interact with supervisors, deal with work stresses, maintain attention and concentration, and understand, remember, and carry out complex instructions. (Tr. 399). The VE responded that while the plaintiff could not perform her past relevant work, there were other jobs that she could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 399-400).

On appeal, this court must determine if the administrative decision, particularly the continued absence of a restriction on reaching, is supported by substantial evidence.

The newer medical evidence submitted included a new examination by Dr. Kidd on June 11, 2002. Dr. Kidd described the plaintiff as having an essentially normal physical examination, apart from cellulitis on the right wrist from a cat bite. (Tr. 576-79). Dr. Kidd did not indicate that he had seen the plaintiff previously, and,

Napier

unlike his previous examination in September, 2001, did not review previous records, which he had described as containing "extensive documentation from various pain clinics and pain doctors" including reports revealing "degenerative changes and hypertrophic changes in the lumbar and cervical spine." (Tr. 289).[1]

A lumbosacral spine x-ray was apparently ordered in connection with his examination and attached to the report, but Dr. Kidd did not initial a box indicating that he had reviewed the report (Tr. 579-80), and, in any case, an x-ray in this area did not address the issue of the plaintiff's cervical problems and limitations on reaching, which had prompted the remand.  Dr. Kidd did not provide any specific functional restrictions, but a state agency physician, Dr. C. Hernandez, reviewed the record on July 2, 2002 and indicated that he was adopting the residual functional capacity from the prior ALJ decision.  (Tr. 588-96).[2]

In any event, considering the record as a whole, the problems described in the court's prior decision concerning the plaintiff's ability to reach are essentially unresolved.  Medical records included with the current applications include reports from a pain specialist, Dr. David Bosomworth, who found tenderness to palpation on examination and diagnosed, among other items, fibromyalgia, cervical and

---

[1]An MRI of the cervical spine showed narrowing and osteophytes. (Tr. 195-6).

[2]No specific rationale is given by the physician, although the state agency employee who requested the physician's opinion apparently believed that res judicata applied to the December, 2001 ALJ decision and this may have influenced Dr. Hernandez.  (Tr. 596).  At the time Dr. Hernandez completed his opinion, the court's remand had not yet been issued.

Napier

lumbar spondylosis without myelopathy, myofascial pain syndrome and possible facet disease. (Tr. 550-7). While he believed that the plaintiff had "significant psychological overlay," and referred her for psychological counseling, he also prescribed large doses of OxyContin as well as Celebrex and Skelaxin. (E.g., Tr. 552). Dr. Bosomworth did not list any functional restrictions, but did describe "easily palpable muscle spasm" in the cervical and lumbar region along with "classical trigger points" in the trapezius and shoulders. (Tr. 550).

As noted in the previous decision, the plaintiff's family physician, Dr. David Delapena, had limited her to less than full-time work (Tr. 294-5), but this opinion was reasonably discounted in view of the plaintiff's testimony that she had provided the answers to Dr. Delapena (Tr. 47). The opinion of Dr. M. Mazloomdoost, a pain specialist, that the plaintiff was restricted to less than full-time work could also have been reasonably rejected in that he cited no objective findings other than tenderness. (Tr. 222-3). It was reasonable for the ALJ to rely upon the <u>first</u> opinion of Dr. Kidd, although he was a one-time examiner, because the physician also reviewed extensive previous medical records. The functional capacities form filled out by Dr. Kidd limited the plaintiff's ability to reach above shoulder level to "34% to 66%" of an eight-hour day, and while the form described this level of activity as "frequently," it was clearly <u>some</u> restriction. (Tr. 290).[3] The second examination of

---

[3] The same level of activity was checked for bending, squatting, crawling, and climbing. Both the ALJ and a state agency physician, Dr. John T. Rawlings, in reviewing the same form, restricted these activities to an "occasional" basis (Tr. 17, 274) and there

Napier

Dr. Kidd does not provide substantial evidence to the contrary. In contrast to the first, it was not bolstered by a review of previous medical records, and Dr. Kidd gave no indication of ever having seen the plaintiff previously.  Essentially, it was a one-time physical examination devoid of any background other than the plaintiff's own oral history, although many records were already available to the state agency and could have been forwarded to the physician for review, as they had been the previous year.  Under the circumstances, with the plaintiff admittedly having degenerative changes of the cervical spine and receiving large amounts of narcotic pain medication, a one-time examination that did not take these factors into account is of little value. Therefore, another remand will be required on this point.

For the reasons given by the defendant in his brief, Docket Entry No. 16, p. 19-21, the ALJ's evaluation of the mental restrictions is supported by substantial evidence, and the plaintiff's argument regarding her ability to hold a job for a significant period of time is without merit.

The decision will be remanded for further consideration of the factors outlined in the opinion.

This the 14th day of May, 2007.



**Signed By:**
**G. Wix Unthank**
**United States Senior Judge**

---

is no logical reason to treat the restriction on reaching differently.